DIETZ, Judge.
Respondent is the mother of Karen and Lisa.[1] Respondent appeals from a permanency planning order and guardianship order that granted custody to the children's maternal grandmother, allowed Respondent limited visitation, and ceased further permanency planning hearings.
As explained below, the trial court's findings, and the corresponding evidence in the record, are insufficient to verify that the maternal grandmother had "adequate resources" to care appropriately for the children, as the applicable statute requires. N.C. Gen. Stat. § 7B-906.1(j). We must therefore vacate the trial court's orders and remand for further proceedings consistent with this opinion.
Facts and Procedural History
On 18 October 2013, Mecklenburg County Department of Social Services filed a juvenile petition alleging that eleven-month-old Karen and three-year-old Lisa were neglected and dependent. The petition alleged that Respondent had untreated substance abuse and mental health issues, including bipolar disorder. DSS further alleged that Respondent was unemployed and without stable housing and did not know how to access community resources. The petition described Karen and Lisa as "dirty" and "only eating once per day due to lack of food in the home."
Respondent initially agreed to place the children with their maternal great aunt in South Carolina but the great aunt later notified DSS that she could not care for the children. Neither child's father was willing or able to take custody of his respective child and neither are parties to this appeal. As a result, DSS obtained non-secure custody of the children and placed them in foster care.
In January 2014, the children's maternal grandmother notified DSS that she was interested in being considered as a placement option for her granddaughters. With the trial court's permission, DSS arranged for a home *630 study of the grandmother's residence in New York through the Interstate Compact on the Placement of Children.
The trial court adjudicated Karen and Lisa dependent juveniles on 15 September 2014. The court acknowledged Respondent's progress on her case plan but found that her "[i]ssues of employment, mental health and housing ... need to be resolved" before the children could be returned to her custody. The court left the children in DSS custody and ordered the agency to pursue a plan of reunification.
The trial court held the initial permanency planning hearing on 1 October 2014. While expressing its concern about Respondent's "lack of progress in her [case plan] and lack of honesty[,]" the court established a permanent plan of reunification with a concurrent plan of guardianship or adoption. The court noted that DSS had received no information regarding the results of the grandmother's home study.
Following a permanency planning hearing on 30 March 2015, the trial court changed the permanent plan for the children to guardianship or adoption with a concurrent goal of reunification with Respondent. The court found that Respondent, who was on bedrest due to a new pregnancy, had not resolved the issues leading to the children's removal from her home and had not been "consistent with visits or calls to the juveniles[.]" The court further found that the grandmother's home study had been approved and that Respondent "does not object" to the children's placement in guardianship with their grandmother.
The trial court suspended reunification efforts and changed the children's permanent plan to guardianship with a relative or other suitable person after a hearing on 15 July 2015. The court found that Respondent was not attending mental health services while on bedrest and that her doctor intended to prescribe medication for her depression once she was thirty-seven weeks into her pregnancy. Respondent remained unemployed and did not have electricity in her home. The children visited their grandmother in New York and returned to foster care with no behavioral problems. Lisa told her therapist that she wished to live with her grandmother.
On 23 November 2015, following a hearing, the trial court entered the permanency planning order and guardianship order that are the subject of this appeal. The court changed the permanent plan for the children to guardianship with their grandmother and, in a separate order, transferred legal custody from DSS to their grandmother as their guardian. Respondent timely appealed the permanency planning order but did not appeal the guardianship order. Respondent later filed a petition for a writ of certiorari seeking appellate review of the guardianship order. We allow the petition and will review the guardianship order together with the permanency planning order.
Analysis
We review the permanency planning order and guardianship order to determine "whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." In re C.M. , 230 N.C. App. 193, 194, 750 S.E.2d 541, 542 (2013).
I. Challenge to Findings Concerning Guardianship
Respondent first claims the trial court failed to properly verify the statutory requirements that the grandmother "understands the legal significance" of guardianship and has the "resources to care appropriately for the juvenile." N.C. Gen. Stat. §§ 7B-600(c), 7B-906.1(j).
When addressing these statutory criteria, the trial court need not "make any specific findings in order to make the verification." In re J.E., 182 N.C. App. 612, 617, 643 S.E.2d 70, 73 (2007). But the record must contain competent evidence demonstrating the guardian's awareness of her legal obligations and her financial means. See In re P.A. , 241 N.C. App. 53, 62, 772 S.E.2d 240, 246 (2015). Specifically, the trial court must "make a determination that the guardian has 'adequate resources' and some evidence of the guardian's 'resources' is necessary as a practical matter, since the trial court cannot *631 make any determination of adequacy without evidence." Id . at 62, 772 S.E.2d at 246.
Here, the only evidence of the guardian's resources is the following testimony by the grandmother:
Q: [Y]ou also would be financially responsible for the children. So do you and your husband work outside the home?
A: No, I do not work. My husband works.
Q: Do you have other income ... other than what your husband earns?
A: No, I receive disability myself.
Q: So you do have that income coming in as well?
A: Yes ma'am.
The trial court also noted that a social services agency in New York "conducted a home study on [the grandmother] and found her to be appropriate to provide care for the juveniles." That home study is not in the record. Finally, the record indicates that the grandmother lives in a four-bedroom home, but there was no evidence or testimony concerning the value of the home or any corresponding mortgage. Based on the testimony and evidence described above, the trial court found that the grandmother "has adequate resources to care appropriately for [the children]."
We agree with Respondent that this evidence is insufficient to verify that the grandmother has "adequate resources" to serve as guardian of the children. The grandmother did not testify to how much her husband was paid, how much she received in disability payments, how much debt she had, or what her monthly expenses were. In a nearly identical case, this Court held that the evidence was insufficient to satisfy the verification requirement. See I n re P.A. , 241 N.C. App. at 58-65, 772 S.E.2d at 245-48. There, the guardian testified that she had "the financial ... ability to support th[e] child and provide for its needs" and that she lived in a three-bedroom home. Id. at 60, 772 S.E.2d at 245, 247. This Court found that evidence insufficient because there was "no evidence at all of what [the guardian] considered to be 'adequate resources' or what her resources were." Id. at 65, 772 S.E.2d at 248. Accordingly, under In re P.A. , we must vacate the guardianship order and permanency planning order for failure to satisfy the statutory verification requirement concerning adequate resources.
II. Visitation Plan
Respondent also challenges the visitation plan entered by the trial court, arguing that it improperly delegated the court's decision-making authority to the guardian. Because we vacate the guardianship order, upon which the visitation order is based, we likewise vacate the visitation order.
III. Waiver of Subsequent Permanency Planning Hearings
Finally, Respondent claims the trial court erred in waiving subsequent permanency planning hearings without entering the necessary findings of fact under N.C. Gen. Stat. § 7B-906.1(n).
Section 7B-906.1 requires that a permanency planning hearing be held "at least every six months" after the initial permanency planning hearing "to review the progress made in finalizing the permanent plan ..., or if necessary, to make a new permanent plan for the juvenile." N.C. Gen. Stat. § 7B-906.1(a). Subsection (n) allows the court to waive further hearings "if the court finds by clear, cogent, and convincing evidence each of the following:"
(1) The juvenile has resided in the placement for a period of at least one year.
(2) The placement is stable and continuation of the placement is in the juvenile's best interests.
(3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
(4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
(5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.
N.C. Gen. Stat. § 7B-906.1(n).
We agree with Respondent that not all of the criteria necessary to waive further permanency *632 planning hearings were satisfied at the time the trial court entered its orders. Thus, the trial court was required to schedule permanency planning hearings at least once every six months until finding that the criteria for waiver were satisfied. Because we vacate the trial court's orders and remand for further proceedings, the trial court can address the need for additional scheduled permanency planning hearings on remand.
Conclusion
We vacate the trial court's permanency planning order and guardianship order and remand for further proceedings consistent with this opinion.
VACATED AND REMANDED.
Judges STEPHENS and DAVIS concur.

We use pseudonyms to protect the children's identities.